CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

JUN 19 2007

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

| | |
|---|---|
| NONA M. WILLIAMS, | Case No. 5:06CV00087 |
| Plaintiff | REPORT AND |
| v. | RECOMMENDATION |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security | By: Hon. James G. Welsh U. S. Magistrate Judge |
| Defendant | |

The plaintiff, Nona Williams, brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ('the agency") denying her claim for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. 405(g).

By order of referral entered January 10, 2007, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On January 9, 2007 the Commissioner's answer was filed along with a certified copy of the administrative record containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, and 28 U.S.C. § 405(g) he is substituted, in his official capacity, for Jo Anne B. Barnhart, the former Commissioner.

The plaintiff's Motion for Summary Judgment, filed on February 8, 2007 is deemed to be her brief addressing the reason why she believes the final decision of the Commissioner ought to be reversed.[2] No written request having been made for oral argument,[3] the Commissioner having now filed his brief in response and Motion for Summary Judgment and the undersigned having reviewed the administrative record, the following report and recommended disposition are submitted.

In her motion the plaintiff contends that the administrative law judge ("ALJ") erred in failing to give the required decisional weight to the medical opinion and functional assessment of her treating neurosurgeon. In response, the Commissioner argues the ALJ adequately and properly weighed the medical evidence, made a supportable functional capacity determination, and relied on substantial evidence in making the step-five determination that the plaintiff retained the ability perform the physical demands of a range of light work.[4] By motion, the Commissioner also seeks summary judgment in his favor.

---

[2] Pursuant to paragraph 1 of the court's Standing Order No. 2005-2, the plaintiff in a Social Security case must file, within thirty a days after service of the administrative record, "a brief addressing why the Commissioner's decision is not supported by substantial evidence or why the decision otherwise should be reversed or the case remanded." In minimal compliance with the intent of this Standing Order, the plaintiff's summary judgment motion sets forth the single reason she believes the final decision of the Commissioner is legally deficient, and it references the court to parts of the administrative record she deems supportive of her position.

[3] Paragraph 2 of the court's Standing Order No. 2005-2 direct that a plaintiff's request for oral argument in a Social Security case, must be made in writing at the time his or her brief is filed.

[4] "*Light work*" is defined in 20 C.F.R. § 404.1567(b) to involve lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category generally requires a good deal of walking or standing, or when it involves sitting most of the time generally involves some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. A job may also be considered light work if it requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday" with intermittent sitting. Social Security Ruling ("SSR") 83-10.

## I. Standard of Review

The court's review is limited to determining whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the conditions for entitlement established by the Act and applicable administrative regulations. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990); *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966).

"Under the ... Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F3$^d$ 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro v. Apfel*, 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater*, 76 F.3$^d$ at 589). The administrative decision-maker's conclusions of law are, however, not subject to the same deferential view and are to be reviewed *de novo*. *Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000).

## II. Administrative History

The record shows that the plaintiff protectively filed her application for DIB on or about March 11, 2004. (R.63,73). In her supporting disability reports, the plaintiff alleged that her disability began on April 29, 2003 due to functional limitations related to cervical disc disease and carpal tunnel pain. (R.76-77). Her claim was denied both initially and on reconsideration. (R.25-35). Pursuant to her timely request, an administrative hearing on her application was held on February 8, 2006 before an ALJ. (R.38-62,348-375). The plaintiff was represented by counsel at the administrative hearing. (R.36-37, 348-375).

Utilizing the agency's standard five-step inquiry,[5] the plaintiff's claim was denied by written administrative decision on April 28, 2006. At the initial determination step, the ALJ found that the plaintiff met the Act's insured status requirements through December 31, 2009 and that she had not engaged in any significant work activity since her alleged onset date. (R.14).

Based on the medical evidence, the ALJ at step-two determined it established that the plaintiff's

---

[5] Determination of eligibility for social security benefits involves a five-step inquiry. *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). It begins with the question of whether, during the relevant time period, the individual engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, step-two of the inquiry is a determination, based upon the medical evidence, of whether the individual has a severe impairment that has lasted or is expected to last for 12 months. 20 C.F.R. § 404.1520(c); *Barnhart v. Walton*, 535 U.S. 212 (2002). If the claimed impairment is sufficiently severe, the third-step considers the question of whether the individual has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so, the individual is disabled; if not, step-four is a consideration of whether the individual's impairment prevents him or her from returning to any past relevant work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the impairment prevents a return to past relevant work, the final inquiry requires consideration of whether the impairment precludes the individual from performing other work. 20 C.F.R. § 404.1520(f).

4

musculoskeletal condition constituted a "severe" impairment [6] within the meaning of the Act. (R.14). In making his additional step-two finding that her anxiety was not a severe impairment, the ALJ specifically noted, among other things, that the plaintiff's anxiety was well-controlled with medication and that the plaintiff had never asserted it to be a functionally limiting condition. (R.16).

Noting that he had paid specific attention to section 1.00 of the medical listings, the ALJ next concluded that the plaintiff's musculoskeletal condition neither met nor equaled the criteria of any listed impairment. (R.17). *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. *Inter alia*, the ALJ predicated this step-three conclusion on the absence of medical evidence which demonstrated any ambulation ineffectiveness, any inability to perform either gross or fine manipulation, any impairment of the lumbar spine or lower extremities, or any significant limitation of the upper extremities. (R.17).

In his review of the medical record, the ALJ made note of the plaintiff's history of cervical disc disease, her C5/6 micro-discectomy in December 1992, her subsequent return in 1993 to full-time work, and her having remained essentially asymptomatic for many years. (R.14-15). He similarly noted her treatment for a number of principally routine medical problems at East Rockingham Health Center (Irene Lohkamp, MD), her treatment beginning in 2003 for carpal tunnel syndrome, her right and left carpal tunnel release surgeries in January 2004, and her subsequent medical care, including participation in a period of physical therapy. (R.15-16). Based on his assessment of the medical evidence, the

---

[6] Quoting *Brady v. Heckler*, 724 F.2$^d$ 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2$^d$ 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. § 404.1520(c).

5

plaintiff's hearing testimony and the vocational testimony, the ALJ concluded that the plaintiff's residual functional capacity was less than that required to perform any of her past relevant work, but it was sufficient to permit her to engage in a range of light work activity. (R.17-21).

After issuance of the ALJ's adverse decision, the plaintiff made a timely request for Appeals Council review. (R.9,347). Her request was denied (R5-8), and the decision of the ALJ now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

**III.   Facts**

The record in this case shows that the plaintiff was fifty-three years of age [7] at the time of the administrative hearing. (R.73,352). She completed the seventh grade in school. (R.90,352). Her past relevant employment included production work in the automobile parts industry and work as a warehouse attendant/forklift operator. (R.69-72,77-78,84-85,93-98,354-357,372).

The plaintiff's medical records document her history of intermittent neck pain with some mild sensory nerve loss and her having undergone a C5/6 anterior cervical micro-discectomy in December 1992. (R.148-151,254-256). She received "excellent relief" following this surgery and returned to full-time work in April 1993. (R.147,250-254). Following some extensive work-related lifting activities in January 1995, the plaintiff developed "a pulling sensation" in her right arm. (R.248). An MRI in

---

[7] Under the agency's regulations, the plaintiff is classified as a "person closely approaching advanced age." 20 C.F.R. § 404.1563(d).

6

February demonstrated that the 1992 neurosurgery by Dr. Ritche Gillespie had resulted in a C5/6 fusion and resolution on her herniated disc. (R.249). Nevertheless, the plaintiff continued to exhibit "a mild underlying C6 cervical radiculopathy," which was treated conservatively. (R.249).

The office records of her primary care physicians, variously dated between February 2002 and December 2005, show that the plaintiff sought medical care or treatment for a number of routine medical problems, including high cholesterol, complaints of heart palpitations, nasal congestion, sore throats, complaints of restless leg syndrome, anxiety, a knot on her elbow, coughs, heartburn, headaches, knee pain, a minor slip and fall injury, non-cancerous fibroglandular breast densities, foot pain, redness under her chin, and generalized body aches. (R.153-154,257-270,272-283,294-302,335-341, 343-346).

An echocardiogram in 2001 demonstrated no cardiopulmonary abnormality (R.199-208), and a colon cancer screening in 2003 was also negative (R.194).

The plaintiff's primary care records also show that she sought treatment for neck and arm pain on two occasions in the Spring of 2003 (R.285-287). In connection with these complaints, Dr. Lohkamp provided the plaintiff with work excuses temporarily restricting her from repetitive pulling, twisting, gripping and lifting more than five pounds. (*Id.*). Additionally, they show that she was seen on one occasion in 2003 and one time in 2004 with complaints of hand discomfort and pain. (R.260-261,284).

7

Complaining of persistent numbness in her hands, the plaintiff saw Dr. Galen Craun on June 3, 2003. (R.219-220). On his recommendation, she was seen by a neurologist in consultation, and she underwent nerve conduction testing. (R.155-161,243-247). This testing disclosed "mild, early bilateral carpal tunnel syndrome." (*Id.*). A repeat MRI done later the same month. (R.195-196). As compared with her prior MRI in 1995, some increased cervical cord compression was noted, most significantly at C4/5 and C6/7. (R.195); however, the neurosurgeon found no clinical symptoms of cord compression and concluded that the plaintiff's neck pain was "mechanical" in nature (R.241-242).

During the Summer and Fall of 2003 the plaintiff's intermittent hand numbness and pain was treated conservatively by Dr. Craun (R.217-219); however, by the end of August 2003 she reported that she was no longer able to work full-time due to chronic aggravation of this hand condition, and Dr. Craun suggested she take short-term disability. (R.213-216). When she failed to respond, despite time off work and the use of wrist splints, Dr. Craun recommended a neurosurgery consultation. (R.211-212,237-240). Surgical decompression of the left median nerve was subsequently performed on January 5, 2004 and the right median nerve was similarly decompressed three weeks later. (R.162-193,209-210,229,234-236). This surgical treatment was later followed by a physical therapy regime. (R.221-222,226,228).

By the Spring 2004, her neurosurgeon, Dr, Eric Schubert, reported that the plaintiff had "done well" with physical therapy and "overall had done very well." (R.225-226). Nevertheless, in his opinion, she could not return to her previous work at Tenneco Automotive. (R.224). In his opinion, the plaintiff was functionally able to engage in work activity that involved walking with "no limitation,"

8

sitting with "no limitation," driving and standing during an entire 8-hour day, lifting ten pounds regularly and twenty pounds occasionally, and using foot controls repetitively. (R.230-233). In his opinion her condition would not permit her to engage in work activity requiring overhead reaching, repetitive pushing or pulling, or repetitive hand activities. (*Id.*).

Although Dr. Schubert suggested several months later that his functional assessment had been "misconstrued," he neither indicated how or in what way it might have been misconstrued. Likewise, he did not point to any evidence to suggest that the plaintiff's medical condition had deteriorated in any way after March 2004. (R.225). Similarly, he offered no explanation for his October 2004 statement that he viewed the plaintiff to be "partially disabled" and able to engage in work part-time activity which required the lifting of no more than twenty pounds and no more than ten pounds regularly, and which required no overhead reaching, no pushing or pulling, and only occasional cervical flexion, extension or rotation. (R.222-223).

In contrast, at differing times during the same year Dr. Craun (R.209-210) and Dr. Lohkamp R.270-271) independently concluded that the plaintiff retained the functional ability to engage in light work[8] activity. As part of the agency's consideration of the plaintiff's claim, similar conclusions were also reached by the two state agency physicians. In September 2004 and again in February 2005 these reviewers each concluded that the plaintiff was functionally able to do light work on a regular and sustained basis that required only limited gross manipulation, some pushing or pulling limitations. (R.317-323).

---

[8] *See* footnote 4.

9

On the basis of the plaintiff's history of anxiety, her records were also twice reviewed by state agency psychologists. (R,303-316). In each instance, it was determined that the plaintiff's anxiety did not adversely affect her functional ability and was, therefore, not "severe" within the meaning of the agency's applicable regulations. *See* 20 C.F.R. §§ 404.1520, 404.1521. *See also* SSR 85-28.

At the administrative hearing, the plaintiff testified that she had worked regularly at Tenneco Automotive as a warehouse attendant from 1989 until April 29, 2003, when she "went on medical leave." (R.354,356-357). In June of the following year, she returned to Tenneco and unsuccessfully tried to work for "six or eight weeks, maybe," as a machine operator. (R.354-356). In addition to testifying about how she spends her days, the plaintiff stated that her neck was chronically "stiff" and painful, that her hands got numb whenever she used them "for any length of time", that she took Ibuprofen for neck, arm and hand pain, and that she was recently diagnosed as having "two spurs on [her] heel" which made walking difficult. (R.357-370).

As a hypothetical question, the vocational witness at the hearing was asked by the ALJ to assume an individual with the plaintiff's vocational profile (age, education and work experience) and additionally to assume an individual with functional abilities to lift or carry as much as twenty pounds occasionally and ten pounds or less regularly, to stand or walk during an entire 8-hour work day, to sit during an entire work day, to drive during an entire work day, to be able to use a pen or pencil but to be unable to work at a keyboard, to be unable to reach overhead, crawl, balance or climb, to be able to bend, stoop or squat only occasionally, and to be unable to use her hands for a repetitive activity.

10

(R,372-373). Such an individual, in the opinion of the vocational witness would not be able to do any of the plaintiff's past relevant work; she would, however, in his view be able to do entry level work as a companion, as a gate tender or a gate guard in the security field, or as a counter clerk. (R.373-374).

IV. Analysis

A. Treating Neurosurgeon's Residual Functional Assessment

As noted above, the plaintiff argues that the ALJ erred by failing to give the required decisional weight to the medical opinion and functional assessment of Dr. Schubert, her treating neurosurgeon. It is her contention that the one page "Certificate of Disability" (R.227) he completed at the end of March 2004 established her inability to engage in any work activity and that he reiterated that opinion in a letter to her employer in mid-June. Her reliance on this functional assessment is, however misplaced.

Although the Commissioner is generally obligated to give enhanced weight to a treating physician's medical opinions, he is bound by such opinions concerning the nature and severity of an individual's condition only when they are supported by medically acceptable clinical and diagnostic techniques or consistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2). In the case now before the court, the ALJ found that Dr. Schubert's opinion lacked support in other medical evidence, including his own treatment notes. (R.18-19).

11

This lack of medical support for Dr. Schubert's opinion is evident from a review of his patently inconsistent multi-page functional assessment made on or near the same date. (R.2340-233). Therein, he opined that the plaintiff was functionally able to engage in a wide range of light work activity (*Id.*). It is similarly inconsistent with his October statement that the plaintiff was "partially disabled" and only capable of working part-time with restrictions (R.223-224). This opinion, upon which the plaintiff relies, is also contrary to the weight of the medical evidence, and based on no evidence of any deteriorating medical condition. *See Johnson v. Barnhart*, 434 F.3d 650, 656 n. 8 (4th Cir. 2005) (an inexplicable conflict between a treating physician's earlier and later opinion is a appropriate basis to reject the later opinion).

The inconsistency between the plaintiff's medical records and Dr. Schubert's October 2004 opinion is evident, for example, from the fact that she never demonstrated any upper or lower extremity loss of strength, any muscle atrophy, or any loss of sensation. (R.239). At most, she evidenced only some "mild" right thumb weakness. (*Id.*). As another example of this inconsistency, the medical record showed that the plaintiff did well following both her 1992 cervical disc surgery and her 2004 bilateral median nerve decompressions. In each instance, she demonstrated good resolution without any significant continuing functional deficits. (R.147,230-236).

The plaintiff's reliance on Dr. Schubert's opinion also fails to acknowledge that the Commissioner is not required to give such enhanced weight to a treating physician's opinion concerning an individual's residual functional abilities. 20 C.F.R. § 404.1527(e). As SSR 96-5p directs, a treating physician's assessment of an individual's residual functional capacity is "never" entitled to controlling

12

weight. To do so, would "confer upon the treating source the authority to make" the disability decision and represent an "abdication of the Commissioner's responsibility." SSR 96-5p.

Additionally, Dr. Schubert's opinion is inconsistent with those of Dr. Craun (R.209,213,215), Dr. Lohkamp (R.270-271), Dr. Gillespie (R.245), and both state agency physicians (R.317-323). As previously noted herein, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings, and it is quintessentially the ALJ's responsibility to weigh the evidence, including the medical evidence, and to resolve any conflicts which might appear therein. *See e.g. Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990). While he may not reject medical evidence for no reason or for the wrong reason, under the regulations the ALJ may assign little or no weight to a medical opinion, even one from a treating physician if he explains his rationale and if the record supports his findings.

In this case, the ALJ fully explained his rationale for discounting Dr. Schubert's October 2004 opinion that the plaintiff was not functionally able to work full time, and substantial evidence in the record supports this finding.

**B.    Hypothetical Question**

In her motion for summary judgment, the plaintiff also asserts that the ALJ erred in failing to include Dr. Schubert's October 2004 restrictions in his hypothetical question to the vocational witness. This contention is also without merit. A hypothetical question needs to include only those impairments

13

supported by the record. *Walker v. Bowen*, 889 f.2$^d$ 47, 50 (4th Cir. 1989). As discussed in the preceding section, the opinion of Dr. Schubert upon which the plaintiff relies was properly discounted by the ALJ, and it was, therefore, properly omitted from the ALJ's hypothetical question.

V.  **Proposed Findings of Fact**

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision considered adequately all of the evidence in this case;

2. The Commissioner's final decision is supported by substantial evidence;

3. The plaintiff's argument that the ALJ failed to give proper weight to Dr. Schubert's October 2004 assessment is without merit;

4. The ALJ acted within his decisional authority to discount the treating physician's opinion of Dr. Schubert;

5. The ALJ properly considered the plaintiff's medical conditions and associated functional limitations;

6. Substantial medical and activities evidence exists to support the ALJ's findings concerning the symptoms and functional limitations;

7. Substantial evidence exists to support the ALJ's finding that the plaintiff was not disabled within the meaning of the Act;

8. Substantial evidence exists to support the ALJ's finding that the plaintiff retains the residual function capacity to perform a range of light work activity;

14

9. Substantial evidence exists to support the ALJ's finding that the plaintiff is able to perform work of the type identified by the vocational expert and that such jobs are available in the national economy;

10. The plaintiff has not met her burden of proving disability; and

11. The final decision of the Commissioner should be affirmed.

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, DENYING plaintiff's motion for summary judgment, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit copy of this Report and Recommendation to all counsel of record.

## VII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law**

**may become conclusive upon the parties**. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 18th day of June 2007.

_____
United States Magistrate Judge